IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE EMMES COMPANY, LLC,** | : | **CIVIL ACTION NO. 1:20-CV-877** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **SAP AMERICA, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant SAP America, Inc. ("SAP"), moves to dismiss the complaint filed by plaintiff The Emmes Company, LLC ("Emmes"), under Federal Rule of Civil Procedure 12(b)(6). SAP alternatively moves to transfer this action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404. For the following reasons, we will exercise our discretion and transfer this case to the Eastern District.

**I.      Factual Background & Procedural History**

The instant motion implicates two parties and one nonparty. Emmes is a Virginia limited liability corporation, with its principal place of business in Rockville, Maryland. (Doc. 1-1 ¶ 3). According to the complaint, "Emmes is a contract research organization, providing clinical trial and research support nationally and internationally." (Id.) SAP is a Delaware corporation, with its principal place of business in Newtown Square, Pennsylvania. (Id. ¶ 4; id. at 108). SAP "develops, manufactures, and sells a variety of cloud-based computer products" throughout the Commonwealth of Pennsylvania, including York,

Pennsylvania. (Id. ¶ 4). AltaFlux, a nonparty, is a Michigan corporation with its principal place of business in Michigan. (Id. ¶ 5). AltaFlux is an expert in implementing SAP's products. (Id.)

SAP originally filed this action in the Court of Common Pleas of York County before timely removing it to this judicial district. (See Doc. 1). In its complaint, Emmes asserts claims for breach of contract, negligence, negligent misrepresentation, vicarious liability, and declaratory judgment. (Doc. 1-1 ¶ 1). Emmes alleges that it paid SAP and its purported agent, AltaFlux, over $85,000 for certain "cloud-based human resource management products" that were never delivered. (Id.) This purported failure violates an April 2018 agreement ("the Agreement") entered into by Emmes and SAP "whereby, SAP agreed to provide Emmes, through its cloud-based services, an online system for the management and control of employee data, time tracking, talent management[,] and other human resource features." (Id. ¶ 2). Emmes also alleges that SAP required that Emmes employ AltaFlux to implement SAP's products and to provide various consulting services related to SAP's products. (Id. ¶¶ 8, 11). The parties stipulated that any disputes arising under the Agreement will be governed by Pennsylvania law and "will be subject to the exclusive jurisdiction of the courts located in the Commonwealth of Pennsylvania." (Doc. 1-1, Ex. A ¶ 12.10).

After SAP filed its opening brief, we ordered the parties to focus exclusively on SAP's transfer argument before addressing the merits of SAP's Rule 12 motion. (Doc. 16). The parties have fully briefed the issue and the transfer issue is ripe for disposition.

**II.    Discussion**

SAP argues that transfer to the Eastern District of Pennsylvania is appropriate under 28 U.S.C. § 1404.  Its argument is twofold.  *First*, it contends that transfer is prudent because venue in this judicial district is improper under 28 U.S.C. § 1391.  *Second*, it claims that transfer is consistent with Section 1404's multi-factor inquiry.

To begin, venue is not improper in this judicial district.  Section 1391(b) governs venue for diversity actions that were "brought" in federal court.  28 U.S.C. § 1391(b).  Section 1391(b) "has no application to this case because this is a removed action," not an action originally "brought" in federal court.  See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953); see also Replica Auto Body Panels & Auto Sales Inc. v. inTech Trailers Inc., 454 F. Supp. 3d 458, 461 (M.D. Pa. 2020) (citation omitted).  In removed diversity actions, venue is governed by Section 1441(a), Polizzi, 345 U.S. at 665 (citing 28 U.S.C. § 1441); see also Replica, 454 F. Supp. 3d at 461 (citations omitted), which states that venue is proper in "the district court of the United States for the district and division embracing the place where such action is pending," 28 U.S.C. § 1441(a).  Because this judicial district embraces York County and its courts, see 28 U.S.C. § 118(b), venue is proper.

We nonetheless conclude that transfer to the Eastern District is warranted under Section 1404.  That statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a). Section 1404 "vest[s] district courts with broad discretion to determine,

3

on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30-31 (1988)).  Movants still bear the burden of establishing that transfer is warranted.  Id. at 879 (citations omitted).  The plaintiff's choice of venue should not be "lightly disturbed" absent a strong showing that the balance of public and private factors favors the movant.  See Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (citations omitted); see also Jumara, 55 F.3d at 879 (citations omitted).

As an initial matter, Section 1404 requires that the proposed forum be one in which the case "might have been brought."  28 U.S.C. § 1404(a).  Our court of appeals has further clarified that Section 1404 transfer is appropriate only "where both the original and the [proposed] venue are proper."  Jumara, 55 F.3d at 878.  As discussed *supra*, venue in this judicial district is proper under Section 1441.  Venue is also proper in the Eastern District of Pennsylvania because SAP—the only defendant in this matter—has its principal place of business within that judicial district.  See 28 U.S.C. § 1391(b)(1); id. § 1391(c)(2); see also id. § 118(a).

Having established venue in both the instant and proposed forums, we must consider the "private and public interests protected by the language of § 1404(a)."  Jumara, 55 F.3d at 879.  The court considers the following private interest factors: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for

4

trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (internal citations omitted).

As a general rule, "a plaintiff's choice of forum is a paramount consideration in any determination of a transfer request" and is accorded great weight. Shutte, 431 F.2d at 25 (internal quotations and citation omitted). However, "a plaintiff's choice of forum is given less deference where the plaintiff chooses a forum outside of its state of residence." Sinclair Cattle Co. v. Ward, 80 F. Supp. 3d 553, 564 (M.D. Pa. 2015) (Conner, C.J.) (quoting WellPet, LLC v. Midwestern Pet Foods. Inc., No. 1:09–CV–1556, 2009 WL 5111790, at *2 (M.D. Pa. Dec. 16, 2009)).  The plaintiff's choice is also entitled to "less deference when none of the conduct complained of occurred in plaintiff's selected forum." Id. (quoting Lomanno v. Black, 285 F. Supp. 2d 637, 644 (E.D. Pa. 2003) (citation omitted)).

Emmes no doubt would prefer to stay in this judicial district, which is conveniently located to its headquarters.  But as SAP points out, no alleged unlawful conduct in this case occurred in the Middle District.  The complaint does not allege that the Agreement was consummated in the Middle District, nor does it assert that SAP or AltaFlux's deficient performance occurred within the district.  Rather, the thrust of Emmes's complaint challenges the implementation of SAP's products by AltaFlux and SAP without reference to implementation in any region encompassed by this judicial district.  (See generally Doc. 1-1).  At best, the complaint alleges that SAP operates throughout the Commonwealth.  (Id. ¶ 4).  This

5

vague and generalized allegation is not enough to connect the claimed misconduct to this venue.

The relevant actors in this suit likewise have no connection to this venue. Emmes is a Virginia company headquartered in Maryland.  (Doc. 1-1 ¶ 3).  SAP is a Delaware corporation headquartered within the Eastern District.  (Id. ¶ 4; id. at 108); 28 U.S.C. § 118(a).  And nonparty AltaFlux is a Michigan company operating out of that state.  (Doc. 1-1 ¶ 5).  Given the distant relationship between the players, the alleged conduct, and this forum, Emmes's decision to file suit here is accorded substantially less deference.  See Sinclair Cattle, 80 F. Supp. 3d at 564 (citations omitted).  This suit has virtually no connection to this district.

Emmes and SAP debate whether the forum-selection clause in the Agreement dictates the appropriate venue.  The existence of a forum-selection clause is another substantial, yet nondispositive, consideration in evaluating the parties' preference as to a convenient forum.  See Jumara, 55 F.3d at 880 (citations omitted); see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 63 (2013) (quoting Stewart, 487 U.S. at 33 (Kennedy, J., concurring)).  As between two different courts within this Commonwealth, the forum-selection clause in the Agreement is not persuasive evidence of the parties' preference.  That clause provides only that Pennsylvania law will apply and that any dispute arising between the parties will find jurisdiction in "the courts" within this Commonwealth.  (Doc. 1-1, Ex. A ¶ 12.10).  The forum-selection clause does not identify one venue in this Commonwealth over another and is not compelling evidence of either party's preference as to the specific district.

For its part, SAP prefers that this suit be hosted in the Eastern District. It contends that the Eastern District is more convenient because it is closer to SAP's principal place of business, any of its potential witnesses, and any of its potential discovery. (Doc. 20 at 4). We recognize that the potential burden of producing witnesses in the Middle District, as opposed to the Eastern District, is slight given the relatively short distance between the two forums. We are also mindful that advances in technology and SAP's substantial resources minimize the burden associated with producing discovery in the Middle District versus the Eastern District. But we cannot overlook the fact that neither the plaintiff, the defendant, nor the underlying conduct in this case has any connection to the Middle District. There is simply no reason to litigate in this court. The private interests thus lean in favor of transfer.

We must also balance various public interests, including "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80 (internal citations omitted). Federal judgments are enforceable no matter the forum, so we are not concerned that judgment in one judicial district will be ignored elsewhere. As noted above, advances in technology minimize the practical limitations of holding trial in one district over another. We are again mindful, however, that there is no practical reason to hold trial in the Middle District aside from Emmes's preference.

7

SAP has not highlighted any court congestion—and this court is not aware of any unique congestion—that would warrant transfer.  Given that the proposed forum is also within this Commonwealth, the local interests, public policies, and familiarity with state law are largely aligned and play no role in our decision.  The public interests are largely neutral.

After balancing the relevant public and private interests, the court concludes that transfer to the Eastern District of Pennsylvania is appropriate "for the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a).  This case quite simply has no meaningful connection to this judicial district, while the Eastern District houses the defendant who is alleged to have engaged in unlawful conduct.  Potential witnesses, evidence, and the events underlying this lawsuit likely either originated or are located there, not here.  In other words, "[this] case would be better off transferred to" the Eastern District. *In re* United States, 273 F.3d 380, 388 (3d Cir. 2001) (quoting Matter of Balsimo, 68 F.3d 185, 187 (7th Cir. 1995)).

### III. Conclusion

We will grant SAP's motion (Doc. 11) to transfer this action to the Eastern District of Pennsylvania. We take no position on the merits of SAP's underlying Rule 12(b)(6) motion to dismiss, which remains pending. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    December 30, 2020